IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JUWAN LEVINGSTON,<br><br>              Plaintiff,<br><br>    v.<br><br>WILLIAM MYLES,<br><br>              Defendant. | Case No. 17 C 5947<br><br>Judge Harry D. Leinenweber |

## MEMORANDUM OPINION AND ORDER

Plaintiff Juwan Levingston ("Levingston") brings this action under 42 U.S.C. § 1983, alleging Illinois state trooper William Myles ("Myles") violated Levingston's Fourth and Fourteenth Amendment rights through the use of excessive force. Levingston also brings a state law claim of battery. Myles has moved for partial summary judgment. (Dkt. No. 117.) For the reasons stated herein, Myles' Motion for Partial Summary Judgment is denied.

### I.   BACKGROUND

The following facts are taken from the parties' Local Rule 56 statements and the underlying exhibits.

On August 3, 2016, Levingston's medical records reflect he was in good health. (Mt. Sinai Medical Records at 2–6, Resp., Ex. 1, Dkt. No. 126-1.) On that day, he went to the Mt. Sinai Medical Center on the west side of Chicago for a routine checkup. (*Id*. at 2.)

Levingston's medical records show that he was completely normal and had no complaints. (*Id.* at 2–5).

On August 19, 2016, Myles, was on patrol when he observed a car speeding and driving erratically. (Pl.'s Resp. to Def.'s Stmt. of Facts ("PSOF") ¶¶ 1–2, Dkt. No. 133.) Myles pulled the car over and identified Levingston as the driver. (*Id.* ¶ 4). Myles observed that Levingston had bloodshot eyes and smelled of alcohol. (*Id.*) Myles asked Levingston to step out of his vehicle and performed a field sobriety test. (*Id.* ¶ 6.) Levingston was then arrested for driving under the influence. (*Id.* ¶ 9.) Myles and Levingston arrived at a Chicago Police Station at around 12:13 A.M. (*Id.* ¶ 10). Upon arrival, Myles escorted Levingston into a windowless, camera-less, room containing a breathalyzer machine. (*Id.* ¶ 11.) Levingston refused to submit to a breathalyzer test. (*Id.* ¶ 14.)

At this point, the parties' statements of facts diverge. Levingston alleges that, shortly after he entered the room, Myles beat him. (*Id.* ¶ 15.) Specifically, Levingston alleges that Myles punched him in the face, slammed his head on the desk, then kneed him in the back with great force. (*Id.*) Myles alleges that he never struck Plaintiff in any way. (*Id.* ¶ 16.) The parties also dispute if and when Levingston was taken to lockup after his interaction with Myles in the station. (*Id.* ¶ 17; Def.'s Resp. to Pl. Stmt. of Facts ("DSOF") ¶2, Dkt. No. 145.) After Levingston was transferred to the

custody of the Chicago Police Department, Levingston and Myles had no further interaction. (PSOF ¶ 18.)

Shortly after Levingston's encounter with Myles, Levingston was found lying on the floor of his cell and taken to the Roseland Community Hospital emergency room. (*Id.* ¶¶ 19–22.) At the hospital Levingston was treated by Dr. Ahmad Shaher. (*Id.* ¶¶ 24–26, 32–36.) Dr. Shaher treated him for alcohol intoxication. (*Id.* at ¶¶ 24–26.) At Dr. Shaher's deposition, he testified that Levingston was also exhibiting signs of neurological weakness that could have been caused by a concussion. (DSOF ¶ 5.) Dr. Shaher never diagnosed Levingston with a concussion. (Dr. Shaher Dep. 93:4–97:12, Def.'s Stmt. of Facts, Ex. 4, Dkt. No. 119-4). Further, Dr. Shaher did not order a CT scan or MRI because he did not believe Levingston had an injury that would warrant such a test. (PSOF ¶ 29.)

Once Levingston was discharged from Roseland, he was returned to lockup in the Chicago Police Department. (*Id.* ¶ 41.) Levingston was discharged from the police station on the morning of August 20, 2016, less than twelve hours after being detained. (*Id.* ¶ 45). That same day, Levingston checked himself into the emergency room at the Rush Hospital in Oak Park. (*Id.* ¶ 46). While at Rush, Levingston informed medical personnel that he was arrested for a DUI the previous day and was assaulted by a police officer at the police station. (DSOF ¶ 18.) Levingston explained that he was experiencing

a headache, low back pain, and abdominal/penile pain. (Rush Medical Records at 7, Resp., Ex. 2, Dkt. No. 126-2.) He was ultimately diagnosed with a headache, concussion with loss of consciousness, lip contusion, and a traumatic hematuria after a foley catheter. (*Id.* at 10, 14.)

Levingston went back to Rush five days later, on August 25, 2016. (*Id.* at 25.) During that visit, Levingston was diagnosed with dysuria and erectile disorder. (*Id.*) On September 4, 2016, Levingston was diagnosed with right flank pain and erectile dysfunction. (*Id.* at 34.) On September 13, 2016, Rush doctors ordered a CT scan to further diagnose Levingston's complaint of right flank plain. (*Id.* at 45.) On September 15, 2016, Levingston returned to Rush, was diagnosed with generalized abdominal pain, and scheduled an MRI. (*Id.* at 46-47.)

On September 21, 2016, Levingston went to Mt. Sinai hospital and reported that he was experiencing back pain that started on or about September 7, 2016. (DSOF ¶ 25.) The medical records state that Levingston had acute low back pain with right-sided sciatica as well as erectile dysfunction. (Mt. Sinai Medical Records at 9, Resp., Ex. 1, Dkt. No. 126-1.) As a result, Levingston was referred to a physical therapist. (*Id.* at 16.) During the September 21st visit, Levingston told the doctor that the pain started after an "assault while in the street." (*Id.* at 13). In Levingston's deposition,

- 4 -

Levingston stated that all times he was "speaking about Officer Myles." (Levingston Dep. 100:16–17, Resp., Ex. 5, Dkt. No. 124-5.). On October 5, 2016, a physical therapist evaluated Levingston. (Physical Therapist Medical Records at 1, Resp., Ex. 3, Dkt. No. 126-3.) Levingston told the physical therapist that he was pulled over, handcuffed, hit, and taken to jail. (*Id.*)

On November 1, 2016, Levingston underwent an MRI which found "lower lumbar spondylosis," "borderline/mild spinal stenosis," and "minimal grade 1 retrolisthesis." (Mt. Sinai Medical Records at 20, Resp., Ex. 1, Dkt. No. 126-1.) On November 30, 2016, Levingston went in for a further evaluation. (*Id.* at 34.) Levingston was diagnosed with having a herniated disc and he was recommended for surgery the following day. (*Id.* at 39–40.) At his November 30 appointment, Levingston told the doctor that he "got in an altercation with an officer in August 2016 and since that time he has had back pain." (*Id.* at 41.) Levingston underwent surgery the next day. (PSOF ¶ 64.).

On April 21, 2017, Levingston returned to Mt. Sinai's emergency room after a fall in the bathtub. (*Id.* ¶ 66.) On April 24, 2017, Levingston underwent two surgeries for his injuries. (*Id.* ¶ 67.) Levingston claims that these surgeries were necessitated by his interactions with Myles. (*Id.* ¶ 68.)

After these surgeries took place, Levingston filed suit against Myles, four other police officers, and the City of Chicago. (Dkt.

No. 1.) The four individual officers and the City of Chicago have been voluntarily dismissed as defendants. (Dkt. Nos. 53, 77.)

## II. LEGAL STANDARD

Summary judgment is appropriate if there is "no genuine dispute of material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party. *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). The relevant substantive law governs whether a fact is material. *Id*. When reviewing the record on a summary judgment motion, the Court must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). If, however, the factual record cannot support a rational trier of fact to find for the nonmoving party, summary judgment is appropriate. *Id*. at 380.

## III. DISCUSSION

Myles admits that "[w]hat happened in the breathalyzer room, a windowless, camera-less room with no witnesses, is a disputed issue for the jury to decide." (Mem. at 2, Dkt. No. 118.) Instead, Myles alleges that Levingston cannot show that his back injuries and erectile dysfunction were due to the alleged beating. Myles' argument is based on two grounds. First, that Levingston offered insufficient evidence that Myles caused the injuries in question. Second that

- 6 -

Levingston is unable to prove causation without testimony from a medical expert.

### A. Evidence of Causation

Civil rights claims, like the one Levingston brings before the court, apply common law rules of tort causation. *Cyrus v. Town of Mukwonago*, 624 F.3d 856, 864-65 (7th Cir. 2010) (citing *Herzog v. Vill. of Winnetka*, 309 F.3d 1041, 1044 (7th Cir.2002)). Causation is typically a question for the jury. Summary judgment is only appropriate when there is "insufficient evidence for the jury to reach a factual conclusion without undue speculation." *Lindsey v. Orlando*, No. 16 C 1967, 2019 WL 1354430, at *4 (N.D. Ill. Mar. 26, 2019) (citing *Shepard v. State Auto Mut. Ins. Co.*, 463 F.3d 742, 748 (7th Cir. 2006)).

Myles' argument on summary judgment is that Levingston cannot sufficiently prove that his injuries were caused by Myles. To properly assess Myles' argument, the Court assumes for the purposes of this section that the alleged beating occurred and will analyze whether any injured caused that night could have been sufficiently related to Levingston's subsequent medical issues.

On August 3, 2016, Levingston went to his doctor for a yearly checkup. He was given a clean bill of health. Levingston's interaction with Myles took place on the night of August 19 and the morning of August 20, 2016. The undisputed facts show that in the

morning of August 20, 2016, Levingston was transported to the emergency room. His treating physician, Dr. Shaher, testified at his deposition that Levingston exhibited symptoms consistent with neurological weakness, including with concussion. Later that same day, Levingston checked himself into a different emergency room. There he was diagnosed with, among other things, a concussion and traumatic hematuria after insertion of a foley catheter. Five days later, Levingston returned to the hospital, where he was diagnosed with dysuria and erectile disorder. Then, on September 4, 2016, Levingston was diagnosed with right flank pain and erectile dysfunction.

    A reasonable jury could find that Levingston was healthy in the days and weeks before he met Myles. After his encounter with Myles, he was diagnosed with a litany of health conditions, including back injuries and erectile dysfunction. Myles argues that summary judgment is appropriate because of the significant length of time between the beating and the diagnoses. In support of this proposition, Myles cites Levingston's September 21, 2016, statement to his doctor. There, Levingston said that he started experiencing back pain in early September and that it started after a hard fall. However, in Levingston's deposition, he testified that his fall was a reference to his experience with Myles. Further, on October 5,

2016, Levingston told his physical therapist that he was arrested and beaten.

Myles' argument that the gap in time between the beating and the diagnoses assumes that there is some other cause for Levingston's injuries. An alleged alternate cause would be a genuine dispute of material fact. Viewing the facts in the light most favorable to Levingston, the Court finds that a jury would not have to engage in "undue speculation" to find that Levingston's injuries were caused by Myles' beating. *See Taylor v. City of Milford*, 10 F.4th 800, 812 (7th Cir. 2021); *Godinez v. City of Chicago*, No. 16-CV-07344, 2019 WL 5597190, at *2 (N.D. Ill. Oct. 30, 2019); *McCloughan v. City of Springfield*, 172 F.Supp. 2d 1009, 1013 (C.D. Ill. 2001) (holding that summary judgment was inappropriate when an officer alleged that plaintiff's injury came from another incident, not from the officer's conduct)).

In support of Myles' argument, he cites *Lindsey v. Orlando*, No 16 C 1967, 2019 WL 1354430, (N.D. Ill. Mar. 26, 2019). *Lindsey* is inapplicable to this case. There, Lindsey filed a § 1983 claim for damages based on an alleged false arrest. *Id*. at *4. Specifically, Lindsey argued that due to his arrest, one of his businesses was unable to set up operations, causing him "personal losses in the form of a reduced bonus and lowered stock value." *Id*. at *1. The court granted summary judgment for defendant on causation, holding

Lindsey's claims were "plainly not foreseeable", and that Lindsey's account was "too long, too tenuous, and too unpredictable to hold Defendants accountable." *Id.* at *6.

Here, Levingston was taken to the emergency room within hours of the alleged beating. At the emergency room, Levingston was catheterized. He continued to complain of back pain and erectile dysfunction in the days and weeks following his release from custody. Unlike in *Lindsey,* Levingston's account came within a reasonable amount of time from the interaction in question. Levingston alleges that he suffered back injuries and erectile dysfunction. These are foreseeable consequences of being kneed in the back with great force and of being catheterized. Therefore, *Lindsey's* "too long, too tenuous, and too unpredictable" standard does not apply. The Court denies summary judgment on this ground.

### B. Need for Expert Testimony

Myles' next argues that Levingston cannot prove causation without expert medical testimony. Causation can be proven without expert testimony, "if all the primary facts can be accurately and intelligibly described to the jury, and if they, as men of common understanding, are as capable of comprehending the primary facts and of drawing correct conclusions from them." *Cyrus v. Town of Mukwonago*, 624 F.3d at 864 (quoting *Salem v. U.S. Lines Co.*, 370 U.S. 31, 35(1962)). In *Cyrus,* a police officer tased the plaintiff

several times, after which plaintiff died. *Id.* at 860. The district court excluded plaintiff's experts' testimony and granted summary judgment for the defendant. *Id.* at 861. On appeal, the Seventh Circuit reversed, stating that plaintiff stopped breathing shortly after being shocked with the taser, and that there was no evidence of alternate, or intervening, causes of death. *Id.* at 865. The Seventh Circuit added, "In short, although the exclusion of a significant part of the medical examiner's testimony leaves the Estate with a major gap in its case, the record is not so wholly devoid of evidence on which a jury could find causation." *Id.*

Levingston did not file any expert reports in this case. However, Levingston argues that he does provide medical evidence of causation. Levingston asserts that this evidence comes from his treating physicians, who need not file expert reports. Levingston confuses the admission of physician testimony generally with the ability of physicians to testify about causation specifically. Treating physicians may properly testify about their observations, diagnoses, and treatments. without filing an expert report. *Coleman v. American Family Mut. Ins. Co.*, 274 F.R.D. 641, 644 (N.D. Ill. 2011); *see also Blameuser v. Hasenfang*, 345 F. App'x 184, 187 (7th Cir. 2009). However, treating physicians may not opine about causation without being properly qualified as experts. *Coleman*, 274 F.R.D. at 644 ("Physicians who intend to offer testimony regarding

- 11 -

causation of the plaintiff's injuries often go beyond the scope of treatment, requiring the physician to submit a complete expert report."); *McCann v. Illinois Cent. R.R. Co.*, 711 F.Supp. 2d, 861, 868 (C.D. Ill. 2010). Because Levingston did not formally disclose any treating physicians as experts, they are treated as fact witnesses. In other words, they may testify to what they observed and the diagnoses they made, but they may not testify about what could have caused the injuries.

Even without expert testimony about causation, Levingston's claim survives summary judgment. From the day he was released from custody, Levingston complained about both back pain and penile pain to several medical professionals. He was ultimately diagnosed with both back injuries and erectile dysfunction. In that way, this case is akin to *Cyrus*. While Levingston's claims could have been bolstered with expert medical testimony, the record he presents enough evidence that creates a genuine dispute of material fact as to causation.

## IV. CONCLUSION

For the reasons stated herein, Myles' Motion for Summary Judgment (Dkt. No. 117) is denied.

**IT IS SO ORDERED.**

Harry D. Leinenweber, Judge
United States District Court

Dated: 3/30/2022